**EXHIBIT B**

**CLAIM CONSTRUCTION OF TERMS IN DISPUTE**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| 1 | control processor (2'649 and '650 patents) | A digital electronic device or circuit that controls other devices or circuits by operating on control information according to instructions. | **Intrinsic Evidence:** '217 Patent, 17:64-18:3, 18:35-40, 19:46-20:6, 20:64-21:3, 76:29-36, 81:32-36. **Extrinsic Evidence:** PMC has had an expert, Dr. Alfred Weaver, provide a declaration and may have Dr. Weaver testify at the *Markman* hearing, that PMC's proposed construction is consistent with the understanding that one of ordinary skill in the art would have had of the disputed claim term or phrase in light of the intrinsic or extrinsic evidence.  *See* Decl. of Alfred C. Weaver dated 5/17/16 (Dkt. 148-41 in 2:15-cv-01366). | Processor that controls other devices or circuitry by processing control information. | *Apple Litigation*, Dkt. No. 246, p. 61 and evidence relied upon for that decision. 2'649 patent at Fig. 3A, Abstract, 82:55-63, 83:38-61, 74:11-84:19 Teleconnect Dictionary (1987) *PMC v. Motorola,* Dkt. No. 136, PMC Opening CC Brief (December 23, 2010) An expert may provide testimony that Funai's proposed construction of "control processor" is consistent with the understanding that one of ordinary skill in the art would have had of the disputed term in light of the intrinsic and extrinsic evidence. |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| 2 | among said plurality of programmable processors ('885 patent) | Between some or all of the programmable processors. | **Intrinsic Evidence:**<br>'217 Patent, 104:55-59, 104:62-105:9.<br>**Extrinsic Evidence:**<br>*Webster's New Collegiate Dictionary* (1981) (among … 1: in or through the midst of : surrounded by  2 : in company or association with … 3 : by or through the aggregate of  4 : in the number or class of … 5 : in shares to each of … 6 a : through the reciprocal acts of ... b : through the joint action of ....). (PMCVIZ00351595-618 at PMCVIZ00351600).<br>PMC may have an expert, Dr. Alfred Weaver, provide a declaration and may have Dr. Weaver testify at the *Markman* hearing, that PMC's proposed construction is consistent with the understanding that one of ordinary skill in the art would have had of the disputed claim term or | Among each of the plurality of programmable processors in the receiver station. | '885 Patent at 102:18-36, 201:28-39<br>'885 File History, 01/15/2015 Response to Office Action<br>An expert may provide testimony that Funai's proposed construction of "among said plurality of programmable processors" is consistent with the understanding that one of ordinary skill in the art would have had of the disputed term in light of the intrinsic and extrinsic evidence. |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | phrase in light of the intrinsic or extrinsic evidence. | | |
| 3 | programming [verb]<br><br>(2'649, '650, 6'649, '775, and '885 patents) | Supplying or loading information or instructions that are used to activate, enable, or perform a processing functionality. | **Intrinsic Evidence:**<br>'217 Patent, 6:32-35, 13:8-28, 17:60-64, 265:28-35.<br><br>**Extrinsic Evidence:**<br>*IEEE Standard Dictionary of Electrical and Electronics Terms* 689 (1984) (program means "a sequence of signals transmitted for entertainment or information"). (PMCAPL00877276-89 at PMCAPL00877288).<br><br>*Webster's New Collegiate Dictionary* (1981) (program, also -gramming … 1 a : to arrange or furnish a program of or for : BILL b : to enter a program  2 : to work out a sequence of operations to be performed by (a mechanism) : provide with a program  3 : to insert a program for (a particular action) into or as if into a mechanism). (PMCVIZ00351595-618 at | Providing a sequence of operating instructions. | 2'649 patent at 8:9-18, 83:27-37, 265:37-51, 266:43-52, 265:37-273:46<br><br>6'649 File History, 10/10/2000 Response to Office Action at Appendix A<br><br>6'649 File History, 07/28/1997 Response to Office Action<br><br>6'649 File History, 02/17/1998 Response to Office Action<br><br><u>Computer Dictionary</u> (10th ed. 2003)<br><br><u>McGraw-Hill Dictionary of Scientific and Technical Terms</u> (3d ed. 1984)<br><br><u>IEEE Standard Dictionary of Electrical and Electronics Terms</u> (1988)<br><br>An expert may provide testimony that Funai's |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | PMCVIZ00351613). PMC has had an expert, Dr. Alfred Weaver, provide a declaration and may have Dr. Weaver testify at the *Markman* hearing, that PMC's proposed construction of "programming" is consistent with the understanding that one of ordinary skill in the art would have had of the disputed claim term in light of the intrinsic or extrinsic evidence. *See* Decl. of Alfred C. Weaver dated 5/17/16 (Dkt. 148-41 in 2:15-cv-01366). | | proposed construction of "programming" is consistent with the understanding that one of ordinary skill in the art would have had of the disputed term in light of the intrinsic and extrinsic evidence. |
| 4 | subset of [a/said] plurality of signals (′217 patent) | Portion of [a/the] larger set of signals. | **Intrinsic Evidence:** ′490 Patent, 19:1-4, 19:35-38. **Extrinsic Evidence:** *Webster's New World Dictionary of Computer Terms* (1983) ("subset" is a smaller group of items within a larger set . . . .). | Less than all of another set of signals. | *Samsung Litigation*, Dkt. No. 110, p. 27 and information relied upon for that decision. |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | (PMCVIZ00351619-29 at PMCVIZ00351629). PMC may have an expert, Dr. Alfred Weaver, provide a declaration and may have Dr. Weaver testify at the *Markman* hearing, that PMC's proposed construction is consistent with the understanding that one of ordinary skill in the art would have had of the disputed claim term or phrase in light of the intrinsic or extrinsic evidence. | | |
| 5 | varying locations (6'649 patent) | Changing order, placement, or location. | **Intrinsic Evidence:** '490 Patent, 4:14-20; '217 Patent, 7:46-50; '217 Patent, 7:64-8:18. **Extrinsic Evidence:** *Webster's New Collegiate Dictionary (1981)* (vary . . . vary•ing . . . vt 1 a : to make a partial change in : make different in some attribute or characteristic  b : to make differences between items in | Changes in the place where a television programming signal can be found within a transmission. | *Samsung Litigation*, Dkt. No. 110, p. 34 and evidence relied upon for that decision. 6'649 patent at 8:19-34, 7:64-8:15, 7:46-52, 8:7-18, 31:21-32, 47:1-3, 131:43-55, 137:62-138:4 6'649 File History, 07/28/1997 Response to Office Action 6'649 File History, |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | : DIVERSIFY  2 : to present under new aspects  vi  1 : to exhibit or undergo change . . 2 : DEVIATE, DEPART  3 : to take on successive values . . . 4 : to exhibit divergence in structural or physiological characters from those typical or usual in the group). (PMCVIZ00351595-618 at PMCVIZ00351617).<br><br>*Webster's New Collegiate Dictionary (1981)* (lo•ca•tion . . . n 1 : the act or process of locating  2 a : a position or site occupied or available for occupancy or marked by some distinguishing feature : SITUATION b  (1) a tract of land designated for a purpose (2) Austral : FARM, STATION). (PMCVIZ00351595-618 at PMCVIZ00351608).<br><br>PMC may have an expert, Dr. Alfred Weaver, provide a declaration and may have Dr. Weaver testify at the *Markman* hearing, that | | 10/10/2000 Response to Office Action Appendix A<br><br>An expert may provide testimony that Funai's proposed construction of "varying locations" is consistent with the understanding that one of ordinary skill in the art would have had of the disputed term in light of the intrinsic and extrinsic evidence. |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | PMC's proposed construction is consistent with the understanding that one of ordinary skill in the art would have had of the disputed claim term or phrase in light of the intrinsic or extrinsic evidence. | | |
| 6 | code (′650 and ′775 patents) | Digitally encoded information. | **Intrinsic Evidence:**<br>′217 Patent, 17:53-57, 27:12-17, 27:63-28:3, 157:14-20, 19:59-62, 25:65-26:40.<br><br>**Extrinsic Evidence:**<br>*McGraw-Hill Dictionary of Scientific and Technical Terms, Third Edition (*1984) (code [COMMUN]  A system of symbols and rules for expressing information, such as the Morse code, EIA color code, and the binary and other machine languages used in digital computers.). (PMCVIZ00351571-85 at PMCVIZ00351576).<br><br>*Webster's New World Dictionary of Computer* | One or more instructions. | *Samsung Litigation*, Dkt. No. 110, p. 41 and evidence relied upon for that decision |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|-----|-----|-----|-----|-----|-----|
| | | | *Terms* (1983) (code:  1 a set of rules defining the way in which bits can be arranged to represent numbers, letters, and special symbols:  each computer uses a type of code, such as ASCII or EBCDIC  2 to assign meanings to a set of numbers, letters, or special symbols  3 to write a program  4  one or more instructions in a program  5 to assign a character to represent a larger item of data so that less storage space is used, as in assigning the number  1 to mean college graduate,  2  for high school graduate, and so on). (PMCVIZ00351619-29 at PMCVIZ00351622).<br><br>*The Illustrated Computer Dictionary* (1983) (code: (1) A system of symbolic characters used to represent data.  (2) The set of instructions in a computer program.). | | |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | (PMCVIZ00351586-94 at PMCVIZ00351589).<br><br>PMC may have an expert, Dr. Alfred Weaver, provide a declaration and may have Dr. Weaver testify at the *Markman* hearing, that PMC's proposed construction is consistent with the understanding that one of ordinary skill in the art would have had of the disputed claim term or phrase in light of the intrinsic or extrinsic evidence. | | |
| 7 | code portion ('775 patent) | Digitally encoded information that is a part of a larger information transmission. | *See* "code."<br><br>**Extrinsic Evidence:**<br><br>*Webster's New Collegiate Dictionary* (1981) (por•tion . . . n . . . 1 : an individual's part or share of something . . . 3 : an often limited part set off or abstracted from a whole . . . .).<br>(PMCVIZ00351595-618 at PMCVIZ00351610). | Part of an instruction set. | *Samsung Litigation*, Dkt. No. 110, p. 41 and evidence relied upon for that decision |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| 8 | command[s] (' 650 patent) | Signal that causes performance of a function. | **Intrinsic Evidence:**<br><br>'217 Patent, 25:33-38, 23:52-57, 26:37-40, 25:1-6, 23:31-44, 268:54-269:4.<br><br>**Extrinsic Evidence:**<br><br>*IEEE Standard Dictionary of Electrical and Electronics Terms* (3d. ed. 1984) (command: (1) electronic computation.  (A) One of a set of several signals (or groups of signals) that occurs as a result of interpreting an instruction; the commands initiate the individual steps that form the process of executing the instruction's operation. (B) Loosely:  an instruction in machine language. (C)  Loosely: a mathematical or logical operator.  (D) Loosely: an operation.). (PMCVIZ00351565-70 at PMCVIZ00351570).<br><br>PMC may have an expert, Dr. Alfred Weaver, provide a declaration and may have Dr. | An instance of signal information that is addressed to a particular subscriber station apparatus and that causes said apparatus to perform a particular function or functions, and that always includes at least a header and an execution segment. | ' 650 patent at 22:4-13, 23:34-43, 23:52-24:2, 24:44-48, 28:1-18, 31:32-45<br><br>' 650 File History, 12/20/1996 Response to Office Action<br><br>Webster's New World Dictionary of Computer Terms (1988)<br><br>An expert may provide testimony that Funai's proposed construction of "command[s]" is consistent with the understanding that one of ordinary skill in the art would have had of the disputed term in light of the intrinsic and extrinsic evidence. |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | Weaver testify at the *Markman* hearing, that PMC's proposed construction is consistent with the understanding that one of ordinary skill in the art would have had of the disputed claim term or phrase in light of the intrinsic or extrinsic evidence. | | |
| 9 | inputting logic (6'649 patent) | Designating computer logic to be used for processing. | **Intrinsic Evidence:** '490 Patent, 9:47-68, 10:10-12.  6'649 patent at 17:53-66, 129:15-20, 77:20-28, 78:8-16, 79:1-19  **Extrinsic Evidence:** *Webster's New World Dictionary of Computer Terms* (1983) (input: 1 designating data and/or programs entered or to be entered into the computer for processing  2 to so enter data and/or programs  3 such data and/or programs). (PMCVIZ00351619-29 at PMCVIZ00351626). | Indefinite. | 6'649 patent at 17:53-66, 129:15-20, 77:20-28, 78:8-16, 79:1-19  6'649 File History, 10/10/2000 Response to Office Action at Appendix A  6'649 File History, 02/17/1998 Response to Office Action  6'649 File History, 07/28/1997 Response to Office Action  Dictionary of Computer Term (4th ed. 1992)  An expert may provide |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | *McGraw-Hill Dictionary of Scientific and Technical Terms* (3d. ed. 1984) (logic [ELECTR] 1. The basic principles and applications of truth tables, interconnections of on/off circuit elements, and other factors involved in mathematical computation in a computer.  2.  General term for the various types of gates, flip-flops, and other on/off circuits used to perform problem-solving functions in a digital computer). (PMCVIZ00351571-85 at PMCVIZ00351582).

PMC may have an expert, Dr. Alfred Weaver, provide a declaration and may have Dr. Weaver testify at the *Markman* hearing, that PMC's proposed construction is consistent with the understanding that one of ordinary skill in the art would have had of the disputed claim term or | | testimony that Funai's proposed construction of "inputting logic" is consistent with the understanding that one of ordinary skill in the art would have had of the disputed term in light of the intrinsic and extrinsic evidence. |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | phrase in light of the intrinsic or extrinsic evidence. | | |
| 10 | stored function invoking data<br><br>(2'649 patent) | Stored data that invokes a function.<br><br>Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *SPAM-controller, 205C is an example of an apparatus that uses function invoking data.*<br><br>**Intrinsic Evidence:**<br>'217 Patent, FIGs. 2E-2K, 12:4-13:4, 23:33-57, 33:33-43:36, 49:10-56, 51:64-52:20, 143:60-144:10, 145:23-40, 241:27-242:14, 243:15-23, 243:37-244:24, 268:54-269:23; '091 Patent, 50:66-51:28; 51:38-52:20; 143:60-144:10.<br><br>'217 Patent, 51:64-52:20 "Receiving the header and execution segment of said first message causes SPAM-controller, 205C, to determine the controlled function or functions that said message instructs URS microcomputers, 205, to perform and to execute the instructions of said functions. Automatically, as said valve | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "stored…data" limitation in claims 39 and 62 is defined solely in terms of the function (i.e., "invoke a function") and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6.<br><br>"Stored…data" recites one or more functions but fails to recite sufficient structure for performing those functions. Thus, the "stored…data" limitation is limited to the structure disclosed in the specification and equivalents.<br><br>The specification teaches that "stored…data" is "a particular set of instructions that is executed as an assembled machine language program. The patent must disclose, however, the corresponding |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|-----|--------------------------------|-----------------------------|-----------------------------------------|-------------------------------|------------------------------------------|
| | | | transfers information, SPAM-controller, 205C, selects the first H converted bits of said information and records said bits at particular SPAM-header-@205 register memory, then determines that said information at SPAM-header-@205 memory (which is the '01' header of the first message) does not match particular 11-header-invoking-!205 information that is '11'/ Not resulting in a match causes controller, 39, automatically to select the next X bits of said transferred binary information and record said bits at particular SPAM-exec-@205 memory (which information is the execution segment of the first combining synch command) with preprogrammed controlled-function-invoking-@205 information. Said comparing results in a match with particular execute-at-205 information | | algorithm for a computer-implemented means-plus-function term. Accordingly, the means plus function claim limitation is indefinite. *Citations to specification of U.S. Patent No. 7,752,649* Subsequently, a second series of instructions is embedded and transmitted at said program originating studio. Said second series is detected and converted into usable digital signals by decoder, 203, and inputted to microcomputer, 205, in the same fashion as the first series. Microcomputer, 205, evaluates the initial signal word or words which instruct it to load at RAM (from the input buffer to which decoder, 203, inputs) and run the information of a particular set of instructions that follows said word or words just as the information of a file named |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | that causes SPAM-controller, 205C to invoke particular preprogrammed load-run-and-code instructions that control the loading of particular binary information at the main RAM of microcomputer, 205"<br><br>**Extrinsic Evidence:**<br><br>*Markman* Order in 2:15-cv-01366 at Dkt. No. 246.<br><br>*Webster's Ninth New Collegiate Dictionary* 637 (9th 1988) ("invoke . . . to put into effect or operation"). (PMCAPL00877253-57 at PMCAPL00877257).<br><br>*Dictionary of Computers, Information, Processing, and Telecommunications* 312 (2d 1987) (invoke means "to activate a procedure in one of its entry points"). (PMCAPL00877270-75 at PMCAPL00877274).<br><br>*Webster's New Collegiate Dictionary* (1981) (in•voke … a : to petition for help or | | FILE.EXE, recorded on the contained floppy disk, would be loaded at RAM (from the input buffer to which the disk drive of said disk inputs) and run were the command "FILE" entered from the console keyboard to the system level of the installed disk operating system. (Hereinafter, such a set of instructions that is loaded and run is called a "program instruction set.") In a fashion well known in the art, microcomputer, 205, loads the received binary information of said set at a designated place in RAM until, in a predetermined fashion, it detects the end of said set, and it executes said set as an assembled, machine language program in a fashion well known in the art.<br><br>'649 Patent at 13:1-28 |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | support  b : to appeal to or cite as authority  2 : to call forth by incantation : CONJURE  3 : to make an earnest request for : SOLICIT … 4 : to put into effect or operation : IMPLEMENT  5 : to bring about : CAUSE....). (PMCVIZ00351630-31). PMC has had an expert, Dr. Alfred Weaver, provide a declaration and may have Dr. Weaver testify at the *Markman* hearing, that PMC's proposed construction is consistent with the understanding that one of ordinary skill in the art would have had of the disputed claim term or phrase in light of the intrinsic or extrinsic evidence.  *See* Decl. of Alfred C. Weaver dated 5/17/16 (Dkt. 148-41 in 2:15-cv-01366). | | |
| 11 | determining content, through use of | *This term does not require construction beyond its plain and* | *SPAM-controller, 205C is an example of an apparatus that performs a "determining* | Subject to 35 U.S.C. § 112 ¶ 6; claim term is | The "processor instructions" limitation in claim 1 is defined solely in terms of |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | processor instructions resident on said computer at said receiver station, of each medium received after said first medium in said plurality of signals ('217 patent, cl. 1) | *ordinary meaning.* Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *content" function.  SPAM-controller, 205C can include demodulators, digital detectors, controllers/ processors, decryptors, digital switches, and buffers.* **Intrinsic Evidence:** '217 Patent, 63:24-33 "Then said conditional-overlay-at-205 instructions cause SPAM-controller, 205C, to compare the information at said first-working memory, which is the unique 'program unit identification code' that identifies the program unit of said 'Wall Street Week' program, to the information at the aforementioned SPAM-first-precondition register memory, which is the same unique code (having been transmitted to SPAM controller, 205C, in the program unit field of the meter-monitor segment of the first combining synch command and so selected and recorded at said register | indefinite. | the function (i.e., determining content of each medium received after said first medium in said plurality of signals) and should, therefore, be construed pursuant to 35 U.S.C. § 112 ¶ 6. "Processor instructions" recites one or more functions but fails to recite sufficient structure for performing those functions. Thus, the "processor instructions" limitation is limited to the structure disclosed in the specification and equivalents. The specification does not use the term "processor instructions." Indeed, the term "instructions" is used numerous different ways without any consistent specific information regarding the instructions. The patent must disclose the corresponding algorithm for |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | memory"<br><br>**Extrinsic Evidence:**<br><br>*Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | | a computer-implemented means-plus-function term. Accordingly, the means plus function claim limitation is indefinite.<br><br>*Citations to specification of U.S. Patent No. 7,747,217*<br><br>Like computer systems, the present invention has capacity for transmitting data and control instructions in the same information stream to many different apparatus at a given subscriber station, for causing computers to generate and transmit programming, and for causing receiver apparatus to operate on the basis of programming and information received at widely separated times.<br><br>'217 Patent at 6:40-47<br><br>In broadcast print and data communications transmissions, the signals may accompany |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | conventional print or data programming in the conventional transmission stream but will include instructions that receiver station apparatus are preprogrammed to process that instruct receiver apparatus to separate the signals from the conventional programming and process them differently.<br><br>'217 Patent at 8:9-15<br><br>Hereinafter, this first set of instructions is called the "control invoking instructions," and the associated steps are called "invoking broadcast control."<br><br>'217 Patent at 12:65-67 |
| 12 | coordinating, through use of processor instructions resident on said computer at | *This term does not require construction beyond its plain and ordinary meaning.* | *SPAM-controller, 205C and Microcomputer 205 are examples of apparatus that perform a "coordinating" function.* | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "processor instructions" limitation in claim 1 is defined solely in terms of the function (i.e., "coordinating a presentation using said information with |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | said receiver station, a presentation using said information with a presentation of a medium comprising an identifier that matches said predetermined identifier based on said step of determining content ('217 patent, cl. 1) | Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | **Intrinsic Evidence:** '217 Patent, 64:42-53 "At subscriber station of FIG. 3 (and at URS microcomputers, 205, at other subscriber stations where information at first-working memory matches information at SPAM-second-precondition memory), said match causes SPAM-controller, 205C, to continue executing particular conditional-overlay-at-205 instructions at a particular instruction.  Said instruction causes SPAM-controller, 205C, to execute 'GRAPHICS ON' at said PC-MicroKey System.  In so doing, SPAM-controller, 205C, completes said conditional-overlay-at-205 instructions and the controlled functions of the second combining synch command" '217 Patent, 64:65-65:3 "In the foregoing fashion and as | | a presentation of a medium comprising an identifier that matches said predetermined identifier based on said step of determining content") and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6. "Processor instructions" recites one or more functions but fails to recite sufficient structure for performing those functions. Thus, the "processor instructions" limitation is limited to the structure disclosed in the specification and equivalents. The specification does not use the term "processor instructions." Indeed, the term "instructions" is used numerous different ways without any consistent specific information regarding the instructions. The patent must disclose the corresponding algorithm for |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | descried in 'One Combined Medium' above, said transferred information of the second combining synch command causes microcomputer, 205, to combine the programming of FIG. 1A and of FIG. 1B and transmit said combined programming to monitor, 202M, where FIG. 1C is displayed.<br><br>**Extrinsic Evidence:**<br><br>*Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | | a computer-implemented means-plus-function term. Accordingly, the means plus function claim limitation is indefinite.<br><br>*Citations to specification of U.S. Patent No. 7,747,217*<br><br>Like computer systems, the present invention has capacity for transmitting data and control instructions in the same information stream to many different apparatus at a given subscriber station, for causing computers to generate and transmit programming, and for causing receiver apparatus to operate on the basis of programming and information received at widely separated times.<br><br>'217 Patent at 6:40-47<br><br>In broadcast print and data communications transmissions, the signals may accompany |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | conventional print or data programming in the conventional transmission stream but will include instructions that receiver station apparatus are preprogrammed to process that instruct receiver apparatus to separate the signals from the conventional programming and process them differently.<br><br>'217 Patent at 8:9-15<br><br>Hereinafter, this first set of instructions is called the "control invoking instructions," and the associated steps are called "invoking broadcast control."<br><br>'217 Patent at 12:65-67 |
| 13 | controlling a microcomputer at said receiver station, through execution of processor | *This term does not require construction beyond its plain and ordinary meaning.* | *Decoder 203, SPAM-controller, 205C, and microcomputer, 205, are all examples of microcomputers that can be controlled through execution of* | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "execution of processor instructions" step in claim 11 is defined solely in terms of the function (i.e., to control a microcomputer at said receiver station) and |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | instructions (ʼ217 patent, cl. 11) | Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *processor instructions. All apparatus listed here include processors, memory and input/output capability.*<br><br>**Intrinsic Evidence:**<br><br>ʼ217 Patent, 48:8-13 "The first example elaborates on the FIG. 1C combining described above in 'One Combined Medium' and focuses on the operation of decoder, 203, SPAM-controller, 205C, and microcomputer, 205, on the execution of controlled functions, and on the use of cadence information to organize signal processing."<br><br>**Extrinsic Evidence:**<br><br>*Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | | should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6.<br><br>"Execution of processor instructions" recites one or more functions but fails to recite sufficient steps or acts for performing those functions. Thus, the "execution of processor instructions" limitation is limited to the steps or acts disclosed in the specification and equivalents.<br><br>The specification does not use the term "execution of processor instructions." Accordingly, the means plus function claim limitation is indefinite.<br><br>*Citations to specification of U.S. Patent No. 7,747,217*<br><br>Modify the execution segment to instruct URS microcomputer, 205, to commence overlay designated in meter monitor |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | segment, record the contents of the execution and meter-monitor segments, and transfer command to URS microcomputer, 205. |
| | | | | | '217 Patent at 24:23-27 |
| | | | | | Execution segment information operates by invoking preprogrammed operating instructions that exist at each subscriber station apparatus that is addressed. For example, a command to URS microcomputers, 205, to load and run the contents of the information segment following said command causes each URS microcomputer, 205, to commence processing particular instructions for loading and running that are preprogrammed at each URS microcomputer, 205. |
| | | | | | '217 Patent at 24:49-56 |
| | | | | | All operating instructions required to control said |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | memory or RAM capacity in detecting end of file signals are preprogrammed as so-called "firmware" at said apparatus. '217 Patent at 35:63-66 |
| 14 | a microcomputer that stores information from said first medium in a storage medium at said receiver station, determines content of each received medium received after said first medium in said plurality of signals and coordinates a presentation using said information | *This term does not require construction beyond its plain and ordinary meaning.*  Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *SPAM-controller, 205C and Microcomputer 205 are examples of apparatus that store information, identify content, and perform a "coordinating" function.*  **Intrinsic Evidence:**  '217 Patent, 231:47-53 "Each weekday after 4:30 PMC, a remote stock-price-data-transmission station transmits all closing stock price data applicable that day and causes apparatus at each subscriber station, in a predetermined fashion, to select and record at the microcomputer, 205, of said station the particular closing price and datum or data that apply to the particular stock or stocks of the | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "microcomputer" in claim 30 is defined solely in terms of the function (i.e., stores information from said first medium in a storage medium at said receiver station, determines content of each received medium received after said first medium in said plurality of signals and coordinates a presentation using said information with a presentation of a second medium based on said microcomputer determining content of said second medium by processing an identifier which identifies said content of each of said medium received after said first medium and comparing said processed identifier to a |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | with a presentation of a second medium based on said microcomputer determining content of said second medium by processing an identifier which identifies said content of each of said medium received after said first medium and comparing said processed identifier to a predetermined identifier, wherein said predetermined identifier is determined at a time prior to receiving said | | preprogrammed portfolio of said computer" <br><br>'217 Patent, 63:24-33 "Then said conditional-overlay-at-205 instructions cause SPAM-controller, 205C, to compare the information at said first-working memory, which is the unique 'program unit identification code' that identifies the program unit of said 'Wall Street Week' program, to the information at the aforementioned SPAM-first-precondition register memory, which is the same unique code (having been transmitted to SPAM controller, 205C, in the program unit field of the meter-monitor segment of the first combining synch command and so selected and recorded at said register memory" <br><br>'217 Patent, 64:42-53 "At subscriber station of FIG. 3 (and at URS microcomputers, 205, at | | predetermined identifier, wherein said predetermined identifier is determined at a time prior to receiving said plurality of signals and said second medium includes an identifier that matches said predetermined identifier) and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6. <br><br>"Microcomputer" recites one or more functions but fails to recite sufficient structure for performing those functions. Thus, the "microcomputer" limitation is limited to the structure disclosed in the specification and equivalents. <br><br>The specification defines the term "microcomputer" as a "conventional microcomputer system with disk drives that is adapted to have capacity for receiving signals from decoder, 203; for generating computer |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | plurality of signals and said second medium includes an identifier that matches said predetermined identifier ('217 patent, cl. 30) | | other subscriber stations where information at first-working memory matches information at SPAM-second-precondition memory), said match causes SPAM-controller, 205C, to continue executing particular conditional-overlay-at-205 instructions at a particular instruction.  Said instruction causes SPAM-controller, 205C, to execute 'GRAPHICS ON' at said PC-MicroKey System.  In so doing, SPAM-controller, 205C, completes said conditional-overlay-at-205 instructions and the controlled functions of the second combining synch command"  '217, 64:65-65:3 "In the foregoing fashion and as descried in 'One Combined Medium' above, said transferred information of the second combining synch command causes microcomputer, 205, to | | graphic information; for receiving a composite video transmission; for combining said graphic information onto the video information of said transmission by graphic overlay techniques, well known in the art; and for outputting the resulting combined information to a TV monitor, 202M, in a composite video transmission." The patent must disclose, however, the corresponding algorithm for a computer-implemented means-plus-function term.  Accordingly, the means plus function claim limitation is indefinite.  *Citations to specification of U.S. Patent No. 7,747,217*  Microcomputer, 205, is a conventional microcomputer system with disk drives that is adapted to have capacity for receiving signals from decoder, 203; for generating computer |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | combine the programming of FIG. 1A and of FIG. 1B and transmit said combined programming to monitor, 202M, where FIG. 1C is displayed." **Extrinsic Evidence:** *Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | | graphic information; for receiving a composite video transmission; for combining said graphic information onto the video information of said transmission by graphic overlay techniques, well known in the art; and for outputting the resulting combined information to a TV monitor, 202M, in a composite video transmission. One such system is the IBM Personal Computer of International Business Machines Corporation of Armonk, N.Y. with an IBM Asynchronous Communications Adapter installed in one expansion slot and a PC-MicroKey Model 1300 System with Techmar Graphics Master Card, as supplied together by Video Associates Labs of Austin, Tex., installed in two other slots. '217 Patent at 10:65-11:12 |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| 15 | output device operatively connected to said at least one receiver and said microcomputer that outputs and displays a multimedia presentation to a user at said multimedia presentation apparatus | *This term does not require construction beyond its plain and ordinary meaning.*<br><br>Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *Monitor 202M is an example of an apparatus that "output and displays a multimedia presentation".*<br><br>**Intrinsic Evidence:**<br>'217 Patent, 64:65-65:3 "In the foregoing fashion and as descried in 'One Combined Medium' above, said transferred information of the second combining synch command causes microcomputer, 205, to combine the programming of FIG. 1A and of FIG. 1B and transmit said combined programming to monitor, 202M, where FIG. 1C is displayed."<br><br>**Extrinsic Evidence:**<br>*Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "output device" in claim 30 is defined solely in terms of the function (i.e., outputs and displays a multimedia presentation to a user at said multimedia presentation apparatus) and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6.<br><br>"Output device" recites one or more functions but fails to recite sufficient structure for performing those functions.<br><br>The specification does not use the term "output device." Indeed, the specification references several distinctly different components that use the word "output" in their names. For example,<br><br>1. Other Output System 261<br><br>2. Distribution Amplifiers Outputting To |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | Signal Processor 63-70<br><br>3. Output Ports (20:23-25)<br><br>It is unclear if "output device" is one, some, none, or all of these. Accordingly, the means plus function claim limitation is indefinite.<br><br>*Citations to specification of U.S. Patent No. 7,747,217*<br><br>Said controller, 39, 44, or 47, has one or more output ports for communicating signal information to said apparatus.<br><br>'217 Patent at 20:23-25 (*see also*, '217 Patent at 5:45-47) |
| 16 | a microcomputer that identifies content of said first medium by processing each identifier of said subset | *This term does not require construction beyond its plain and ordinary meaning.*<br><br>Plaintiff objects to the contention that this claim | *SPAM-controller, 205C and Microcomputer 205 are examples of apparatus that identify content.*<br><br>**Intrinsic Evidence:**<br><br>'217 Patent, 63:24-33 "Then said conditional-overlay-at- | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "microcomputer" in claim 38 is defined solely in terms of the function (i.e., identifies content of said first medium by processing each identifier of said subset of said plurality of signals and comparing each |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | of said plurality of signals and comparing each processed identifier to a predetermined identifier ('217 patent, cl. 38) | term constitutes a means or step plus function limitation and is therefore indefinite. | 205 instructions cause SPAM-controller, 205C, to compare the information at said first-working memory, which is the unique 'program unit identification code' that identifies the program unit of said 'Wall Street Week' program, to the information at the aforementioned SPAM-first-precondition register memory, which is the same unique code (having been transmitted to SPAM controller, 205C, in the program unit field of the meter-monitor segment of the first combining synch command and so selected and recorded at said register memory" '217 Patent, 131:2-19 "causing said control processor, 39J, to transmit a message that consists of binary information of a '00' header then particular execution segment information that is addressed to microcomputer, 205, (and | | processed identifier to a predetermined identifier) and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6. "Microcomputer" recites one or more functions but fails to recite sufficient structure for performing those functions. Thus, the "microcomputer" limitation is limited to the structure disclosed in the specification and equivalents. The specification defines the term "microcomputer" as a "conventional microcomputer system with disk drives that is adapted to have capacity for receiving signals from decoder, 203; for generating computer graphic information; for receiving a composite video transmission; for combining said graphic information onto the video information of said transmission by |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | causes microcomputer, 205, to process the information of the meter-monitor segment immediately following said execution segment information as new programming now being transmitted on the channel of the channel mark of said meter-monitor segment segment) then meter-monitor segment information that includes the 'program unit identification code' and subject matter information of said first command and the channel mark of cable channel 13 as well as appropriate meter-monitor format information then any padding bits required to end said message.  (Said message whose transmission is caused by receiving said first command enables microcomputer, 205, in a fashion described more fully below, to tune automatically to receive the program that said 'program unit | | graphic overlay techniques, well known in the art; and for outputting the resulting combined information to a TV monitor, 202M, in a composite video transmission." The patent must disclose, however, the corresponding algorithm for a computer-implemented means-plus-function term. Accordingly, the means plus function claim limitation is indefinite.<br><br>*Citations to specification of U.S. Patent No. 7,747,217*<br><br>Microcomputer, 205, is a conventional microcomputer system with disk drives that is adapted to have capacity for receiving signals from decoder, 203; for generating computer graphic information; for receiving a composite video transmission; for combining said graphic information onto the video information of said transmission by |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | identification code' identifies if said program is of interest" **Extrinsic Evidence:** *Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | | graphic overlay techniques, well known in the art; and for outputting the resulting combined information to a TV monitor, 202M, in a composite video transmission. One such system is the IBM Personal Computer of antinational Business Machines Corporation of Armonk, N.Y. with an IBM Asynchronous Communications Adapter installed in one expansion slot and a PC-MicroKey Model 1300 System with Techmar Graphics Master Card, as supplied together by Video Associates Labs of Austin, Tex., installed in two other slots. '217 Patent at 10:65-11:12 |
| 17 | each said receiver station adapted to control the decoder in order to | *This term does not require construction beyond its plain and ordinary meaning.* | *The decoder 203 is controlled to obtain digital information from either a "full-field-search" or "normal-location-search". In either search mode, the* | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "receiver station" in claim 1 is defined solely in terms of the function (i.e., to control the decoder in order to generate and deliver video at the video monitor) |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | generate and deliver video at the video monitor<br><br>('775 patent, cl. 1) | Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *decoder delivers video overlay information and the accompanying received video information properly, which is then displayed on a video monitor.*<br><br>**Intrinsic Evidence:**<br><br>'217 Patent, 236:21-44 "In the video/computer combined medium, capacity is found by transmitting said sets in portions of the television picture that are covered by locally generated overlays (which in digital television transmissions can include frames of transmitted video that are "frozen" after reception in fashions well known in the art).  One controlled function that is preprogrammed at the controllers, 39, of the decoders, 203, of subscriber stations and that is caused to be executed by receiving a SPAM message containing expand-to-full-field-search execution segment | | and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6.<br><br>"Receiver station" recites one or more functions but fails to recite sufficient structure for performing those functions. Thus, the "receiver station" limitation is limited to the structure disclosed in the specification and equivalents.<br><br>The specification fails to disclose the algorithm used by the "receiver station" to perform the function of controlling the decoder in order to generate and deliver video at the video monitor. The failure to disclose the corresponding algorithm for a computer-implemented means-plus-function term renders the claim indefinite.<br><br>*Citations to specification of U.S. Patent No. 8,675,775* |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | information is a function whose instructions cause said controller, 39, to cause the line receivers, 33, of said decoders, 203, to commence detecting digital information in every frame of its received video information from the first detectable portion of line of said frame to the last detectable portion of the last line of said frame.  A second controlled function that is preprogrammed at said controllers, 39, and that is caused to be executed by receiving a SPAM message containing resume-normal-location-search execution segment information is a function whose instructions cause said controller, 39, to cause said line receivers, 33, to commence detecting digital information in the normal transmission location of every frame of its received video information." ʼ217 Patent, 10:55-11:6 "TV signal decoder, 203, which is | | As regards decoders and decryptors, many different systems exist, at present, that enable programming suppliers to restrict the use of transmitted programming to only duly authorized subscribers. The prior art includes so-called "addressable" systems that have capacity for controlling specific individual subscriber station apparatus by means of control instructions transmitted in broadcasts. Such systems enable broadcasters to turn off subscriber station decoder/ decryptor apparatus of subscribers who do not pay their bills and turn them back on when the bills are paid. '775 Patent at 5:29-38 Controller, 20, has capacity for controlling the operation of all elements of the signal processor and can receive |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | described more fully below, has capacity for receiving a composite video transmission; detecting digital information embedded therein; correcting errors in the received information by means of forward error checking techniques, well known in the art; converting the received information, as may be required, by means of input protocol techniques, well known in the art, into digital signals that microcomputer, 205, can receive and process and that can control the operation of microcomputer, 205; and transferring said signals to microcomputer, 205. Microcomputer, 205, is a conventional microcomputer system with disk drives that is adapted to have capacity for receiving signals from decoder, 203; for generating computer graphic information; for receiving a | | operating information from said elements. Controller, 20, has capacity to turn off any element or elements of controlled subscriber station apparatus, in whole or in part, and erase any or all parts of erasable memory of said controlled apparatus. ‘775 Patent at 17:64-18:3 Microcomputer, 205, is a conventional microcomputer system with disk drives that is adapted to have capacity for receiving signals from decoder, 203; for generating computer graphic information; for receiving a composite video transmission; for combining said graphic information onto the video information of said transmission by graphic overlay techniques, well known in the art; and for outputting the resulting combined information to a TV monitor, 202M, in a composite video |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | composite video transmission; for combining said graphic information onto the video information of said transmission by graphic overlay techniques, well known in the art; and for outputting the resulting combined information to a TV monitor, 202M, in a composite video transmission." **Extrinsic Evidence:** *Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | | transmission. One such system is the IBM Personal Computer of International Business Machines Corporation of Armonk, N.Y. with an IBM Asynchronous Communications Adapter installed in one expansion slot and a PC-MicroKey Model 1300 System with Techmar Graphics Master Card, as supplied together by Video Associates Labs of Austin, Tex., installed in two other slots. '775 Patent at 10:65-11:12 |
| 18 | controlling said valve, in response to said valve control signals, so that said valve performs at least one of the functions of ceasing to communicate | *This term does not require construction beyond its plain and ordinary meaning.* Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is | *Flags are set to control whether a valve communicates, or not, information to a processor.* **Intrinsic Evidence:** '217 Patent, 51:61-63 "Automatically the EOFS valve of SPAM-controller, 205C, commences processing and transferring | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "controlling said valve" step in claim 1 is defined solely in terms of the function (i.e., "performs at least one of the functions of ceasing to communicate and commencing to communicate said embedded signals to said at least one processor") and should therefore be |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | and commencing to communicate said embedded signals to said at least one processor ('885 patent, cl. 1) | therefore indefinite. | said information until an end of file signal is detected." '217 PAtent,  37:21-25 "Determining a value of "1" at said Flag causes said valve, in a fashion described more fully below, to complete said word evaluation sequence, in respect to said given signal word, without transferring any information of said given signal word to said external receiving apparatus." '217 Patent,  38:24-39:5 "As described above, determining, under control of said process-EOFS-WORD instructions, that the value of the information at said EOFS Complete Flag is "0" means that an end of file signal has been detected.  Determining, under control of said instructions, that said value is "0" causes said valve to execute particular complete-signal-detected instructions.  Said instructions cause said | | construed pursuant to 35 U.S.C. § 112 ¶ 6. "Controlling said valve" recites one or more functions but fails to recite sufficient steps or acts for performing those functions.  Thus, the "controlling said valve" limitation is limited to the steps or acts disclosed in the specification and equivalents. The specification teaches that "controlling said valve" is performed by operating instructions preprogrammed as "firmware." These operating instructions, however, are not disclosed in the specification--the corresponding algorithm for a computer-implemented means-plus-function term must be disclosed.  Accordingly, the means plus function claim limitation is indefinite. *Citations to specification of* |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | valve to inform said external receiving apparatus of the presence of an end of file signal in a fashion that is the preprogrammed fashion of the microprocessor, buffer/comparator, or buffer of which said valve is an adapted component.<br><br>As one example of said fashion, for a buffer or buffer/comparator apparatus that operates under control of a controller to process received signal words and transfer signal information to a microprocessor (which may be a component of said controller), said instructions cause said valve to cause said apparatus to transmit particular EOFS-signal-detected information to said controller then to wait, in a waiting fashion well known in the art, for a control instruction from said controller.  Said EOFS-signal-detected information causes said controller to | | *U.S. Patent No. 8,711,885*<br><br>All operating instructions required to control said memory or RAM capacity in detecting end of file signals are preprogrammed as so-called "firmware" at said apparatus. (In this specification, said dedicated capacity is called an "EOFS valve" because, in addition to detecting end of file signals, said capacity also regulates the flow of SPAM information in fashions that are described more fully below.) At any given EOFS valve, the EOFS Word Evaluation Location and EOFS Standard Word Location are conventional dynamic memory locations each capable of holding one full signal word of binary information. The EOFS Standard Length Location and the EOFS WORD Counter are each conventional dynamic memory locations capable |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | determine, in a preprogrammed fashion, how to process the particular EOFS information at said valve and to transmit either a particular transmit-and-wait instruction or a particular discard-and-wait instruction to said valve.  (Examples of controller operations are presented below.)  Said transmit-and-wait instruction causes said valve to transfer one complete end of file signal.  More precisely, said instruction causes said valve automatically to output one instance of said EOFS WORD information at said EOFS Standard Word Location a particular number of times which particular number is the numerical value of the information at said EOFS Standard Length Location.  Then automatically said valve sets the information at said EOFS WORD Counter to zero (thereby signifying that no | | of holding, at a minimum, eight binary bits-that is, one byte----of information. The EOFS WORD Flag, EOFS Empty Flag, and EOFS Complete Flag are each conventional dynamic memory locations capable of holding, at a minimum, one bit of binary information.<br><br>'885 Patent at 35:49-67<br><br>To prevent such erroneous processing, in the preferred embodiment, after the initial generation of any given instance of SPAM message information (not including end of file signal information) and before the embedding and transmitting of said instance, said information is transmitted through an apparatus, called an "EOFS valve," that detects end of file signals and is described below. If said valve detects in said information particular |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|-----|------|------|------|------|------|
| | | | EOFS WORDs are retained), completes said word evaluation sequence, in respect to the signal word of the information at said EOFS Word Evaluation Location, and transmits particular complete-and-waiting information to said controller. Alternatively, said discard-and-wait instruction causes said valve merely to set the information at said EOFS WORD Counter to zero (thereby discarding information of said end of file signal), to complete said word evaluation sequence, in respect to said signal word of the information at said EOFS Word Evaluation Location, and to transmit said complete-and-waiting information to said controller. Subsequently, said complete-and-waiting information causes said controller to transmit further instructions that control said apparatus and said valve in | | information that constitutes an end of file signal, before being embedded and transmitted, the binary information of said instance is rewritten, in a fashion well known in the art that may be manual, to cause substantively the same information processing at subscriber stations without containing an instance of information that is identical to the information of an end of file signal. (Hereinafter, such pre-transmission processing of a message is called a "pre-transmission evaluation.").<br><br>'885 Patent at 33:41-56<br><br>Receiving any given signal word of said transmission, causes said EOFS valve to commence, in respect to said given signal word, a particular word evaluation sequence that is fully automatic. Automatically said valve places |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | the processing of further information and the detecting of further end of file signals." <br><br> '217 Patent, 90:46-50 "Receiving the first EOFS WORD of said eleven causes EOFS valve, 39F, to commence retaining information of said WORD, in the fashion described above, and to cease transferring information to microcomputer, 205." <br><br> **Extrinsic Evidence:** <br><br> *Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | | information of said word at said EOFS Word Evaluation Location and compares the information at said Location to the EOFS WORD information at said EOFS Standard Word Location. Whenever said comparison is made, resulting in a match causes said valve automatically to set the information of said EOFS WORD Flag to "O". (Resulting in a match means that said given signal word is an EOFS WORD and may be a part of an end of file signal.) Not resulting in a match causes said valve automatically to set the information of said EOFS WORD Flag to "1". Then automatically said valve determines the value of said information at said EOFS WORD Flag, in a fashion well known in the art, and executes one of two sets of word evaluation sequence instructions on the basis of |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | the outcome of said determining. '885 Patent at 36:23-40. |
| 19 | selecting, by said first processor, a specific input source from said plurality of sources based on said embedded data, said embedded data causing at least one of said first processor and said second processor to commence waiting to receive said input from said specific input source ('885 patent, cl. 9) | *This term does not require construction beyond its plain and ordinary meaning.* Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *Control processor 39J configures the connections provided by matrix switch 39I, and whether decryptor 39K will receive data to decrypt or not.* **Intrinsic Evidence:** '217 Patent, 106:1-40 "Said instructions cause control processor, 39J, first, to identify EOFS valve, 39F, in a predetermined fashion, as the primary source of input SPAM message information; to place particular from-39F information at the aforementioned SPAM-primary-input-source register memory; and to place information of a particular reentry-address at the aforementioned SPAM-address-of-next-instruction-upon-primary-interrupt register memory which | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite | The "selecting…a specific input source" by said first processor step in claim 9 is defined solely in terms of the function (i.e., "causing at least one of said first processor and said second processor to commence waiting to receive said input from said specific input source") and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6. "Selecting…a specific input source" recites one or more functions but fails to recite sufficient steps or acts for performing those functions. Thus, the "selecting…a specific input source" by said first processor limitation is limited to the steps or acts disclosed in the specification and |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | reentry-address specifies the location of the next decrypt-process-and-meter-current-01-or-11-header-message instruction to be executed when interrupt information of end of file signal detected information is next received by control processor, 39J, from said primary source of input SPAM message information, EOFS valve, 39F.<br><br>Then said instructions cause control processor, 39J, to transfer to decryptor, 39K, the SPAM message associated with the particular information at the SPAM-header memory of control processor, 39J. Automatically, said nstructions cause control processor, 39J, to cause matrix switch, 39I, to cease transferring information from EOFS valve, 39F, to control processor, 39J, and commence transferring information from control | | equivalents.<br><br>The specification does not use the term "first processor." Accordingly, the means plus function claim limitation is indefinite.<br><br>*Citations to specification of U.S. Patent No. 8,711,885*<br><br>Transmitting the programming with said embedded program unit identification information causes signal processors at selected receiver stations each to commence selecting and receiving specific programming of interest in the fashion of "AUTOMATING U. R. STATIONS . . . RECEIVING SELECTED PROGRAMMING." Automatically receiver stations all over said nations commence tuning to different transmissions and receiving selected programming that differs |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | processor, 39J, to decryptor, 39K. Then said instructions cause control processor, 39J, to transfer all SPAM message information recorded at said SPAM-input-signal memory of control processor, 39J. Said information is all the information of said first message that EOFS valve, 39F, has already transferred. Automatically, decryptor, 39K, commences receiving SPAM signal information. Then said instructions cause control processor, 39J, to cause matrix switch, 39I, to cease transferring information from control processor, 39J, to decryptor, 39K, and to commence transferring SPAM message information from EOFS valve, 39F, to decryptor, 39K. As decryptor, 39K, then accepts transferred information from matrix switch, 39I, automatically EOFS valve, 39F, | | from receiver station to receiver station.<br><br>'885 Patent at 274:24-32<br><br>Thus so transmitting said program unit identification information of said "Farm Plans of Europe" program causes apparatus at the ultimate receiver stations of farmers in all of said nations to interconnect display (or other output apparatus) to the transmission of said program and to combine to the computer system of said transmission in the fashions described in example #10 and in "AUTOMATING U. R. STATIONS ... MORE ON EXAMPLE #7 ... RECEIVING SELECTED PROGRAMMING AND COMBINING SELECTED URS MICROCOMPUTERS, 205, AUTOMATICALLY TO THE COMPUTER SYSTEM OF A SELECTED |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | commences transferring SPAM signal information, beginning with the first signal word of said first message that is immediately after the information of said first message that EOFS valve, 39F, has already transferred. In this fashion, control processor, 39J, causes all information of said first message to be transferred to decryptor, 39K." | | PROGRAMMING TRANSMISSION." '885 Patent at 274:42-53 |
| 20 | controlling, with said programmable control processor, the passing of a second portion of said stream of digital data among said plurality of programmable processors in a second passing fashion or the | *This term does not require construction beyond its plain and ordinary meaning.* Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *Control processor 39J configures the connections provided by matrix switch 39I to determine where data should be routed.* **Intrinsic Evidence:** '217 Patent,  106:15-40 "Then said instructions cause control processor, 39J, to transfer to decryptor, 39K, the SPAM message associated with the particular information at the SPAM-header memory of control | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "programmable control processor" in claim 100 is defined solely in terms of the function (i.e., controlling "the passing of a second portion of said stream of digital data among said plurality of programmable processors in a second passing fashion or the outputting of second processed information from said plurality of programmable processors in response to said passed |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | outputting of second processed information from said plurality of programmable processors in response to said passed control portion (''885 patent, cl. 100) | | processor, 39J. Automatically, said nstructions cause control processor, 39J, to cause matrix switch, 39I, to cease transferring information from EOFS valve, 39F, to control processor, 39J, and commence transferring information from control processor, 39J, to decryptor, 39K.  Then said instructions cause control processor, 39J, to transfer all SPAM message information recorded at said SPAM-input-signal memory of control processor, 39J.  Said information is all the information of said first message that EOFS valve, 39F, has already transferred. Automatically, decryptor, 39K, commences receiving SPAM signal information. Then said instructions cause control processor, 39J, to cause matrix switch, 39I, to cease transferring information from control | | control portion") and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6. "Programmable control processor" recites one or more functions but fails to recite sufficient structure for performing those functions. Thus, the "programmable control processor" limitation is limited to the structure disclosed in the specification and equivalents. The specification does not use the term "programmable control processor." Accordingly, the means plus function claim limitation is indefinite. If the limitation is found to be definite or is not construed under 35 U.S.C. § 112 ¶ 6., the specification teaches a "control processor 39J." The control processor 39J may be preprogrammed, indicating it is |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | processor, 39J, to decryptor, 39K, and to commence transferring SPAM message information from EOFS valve, 39F, to decryptor, 39K.  As decryptor, 39K, then accepts transferred information from matrix switch, 39I, automatically EOFS valve, 39F, commences transferring SPAM signal information, beginning with the first signal word of said first message that is immediately after the information of said first message that EOFS valve, 39F, has already transferred. In this fashion, control processor, 39J, causes all information of said first message to be transferred to decryptor, 39K." **Extrinsic Evidence:** *Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | | "programmable." Assuming the "programmable control processor" is the "control processor 39J," the "programmable control processor" is the processor at which all controlled functions of controller, 39, are invoked. The patent must still disclose, however, the corresponding algorithm for a computer-implemented means-plus-function term. Accordingly, the means plus function claim limitation is indefinite. *Citations to specification of U.S. Patent No. 8,711,885* In keeping with the function of control processor, 39J, as the processor at which all controlled functions of controller, 39, are invoked, all aforementioned particular register memories of controller, 39, are located at control processor, 39J. '885 Patent at 82:3-7 |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|-----|--------------------------------|------------------------------|-----------------------------------------|-------------------------------|-------------------------------------------|
|     |                                |                              |                                         |                               | Besides being the processor at which all controlled functions of controller, 39, are invoked, control processor, 39J, is the processor that controls all controlled apparatus of decoder, 203, (except for a decryptor, 39K, described more fully below) and controls all apparatus described above as being controlled by SPAM-controller, 205C. Control processor, 39J, controls not only buffers, 39E and 39G, valves, 39F and 39H, and switch, 391, but also processors, 398 and 39D, as well as all other apparatus of decoder, 203, controlled by controller, 39. Control processor, 39J, has all required transmission capacity for transmitting control instructions to and receiving control information from all such controlled apparatus. In addition, control processor, |

EXHIBIT B

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | 39J, controls the CPU and the PC-Micro Key 1300 system of microcomputer, 205, in certain SPAM functions and has capacity, via matrix switch, 391, to transmit control information to and receive control information from said CPU and said PC-MicroKey 1300 system.<br><br>'885 Patent at 82:49-66. |
| 21 | controlling, with said programmable control processor, the passing of a second portion of said stream of digital video data among said plurality of programmable processors in a second passing fashion in response to | *This term does not require construction beyond its plain and ordinary meaning.*<br><br>Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *Control processor 39J configures the connections provided by matrix switch 39I to determine where data should be routed.*<br><br>**Intrinsic Evidence:**<br><br>'217 Patent, 114:39-115:18 "Completing the controlled functions of said first message causes control processor, 39J, automatically to prepare to receive the next SPAM message. Automatically, control processor, 39J, compares the information at said SPAM- | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "programmable control processor" in claim 100 is defined solely in terms of the function (i.e., controlling "the passing of a second portion of said stream of digital data among said plurality of programmable processors in a second passing fashion or the outputting of second processed information from said plurality of programmable processors in response to said passed control portion") and should therefore be construed |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | said passed control portion ('885 patent, cl. 102) | | header memory to particular preprogrammed cause-retention-of-exec information that is "01". A match results which causes control processor, 39J, to compare the information at the aforementioned SPAM-Flag-executing-secondary-command register memory to particular preprogrammed information that is "0". A match results which signifies that control processor, 39J, is executing control functions invoked by information of a secondary level execution segment. Accordingly, said match causes control processor, 39J to place information of the information at said SPAM-exec memory at the aforementioned SPAM-last-secondary-01-header-exec register memory (rather than at SPAM-last-01-header-exec register memory). Being preprogrammed to collect monitor information, | | pursuant to 35 U.S.C. § 112 ¶ 6. "Programmable control processor" recites one or more functions but fails to recite sufficient structure for performing those functions. Thus, the "programmable control processor" limitation is limited to the structure disclosed in the specification and equivalents. The specification does not use the term "programmable control processor." Accordingly, the means plus function claim limitation is indefinite. If the limitation is found to be definite or is not construed under 35 U.S.C. § 112 ¶ 6., the specification teaches a "control processor 39J." The control processor 39J may be preprogrammed, indicating it is "programmable." Assuming the "programmable control |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | control processor, 39J, automatically compares the information at said SPAM-Flag-monitor-info memory with particular preprogrammed "0" information.  No match results which indicates that control processor, 39 J, has transferred monitor information in respect to said first message.  Then, automatically, control processor, 39J, causes all apparatus of control processor, 39J, to delete from memory all information of said first message except information at said SPAM-first-precondition, SPAM-last-01-header-exec, and SPAM-last-secondary-01-header-exec memories. Finally, control processor, 39J, causes EOFS valves, 39F and 39H, to commence processing inputted signal words, in their preprogrammed detecting fashions, and outputting | | processor" is the "control processor 39J," the "programmable control processor" is the processor at which all controlled functions of controller, 39, are invoked. The patent must still disclose, however, the corresponding algorithm for a computer-implemented means-plus-function term. Accordingly, the means plus function claim limitation is indefinite.<br><br>*Citations to specification of U.S. Patent No. 8,711,885*<br><br>In keeping with the function of control processor, 39J, as the processor at which all controlled functions of controller, 39, are invoked, all aforementioned particular register memories of controller, 39, are located at control processor, 39J.<br><br>'885 Patent at 82:3-7<br><br>Besides being the processor at which all controlled |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | information to matrix switch, 39I; causes matrix switch, 39I, to commence transferring information from the EOFS valve identified by the information at the aforementioned SPAM-primary-input-source register memory, which is EOFS valve, 39F, to control processor, 39J; and commences waiting to receive information of a subsequent SPAM header from matrix switch, 39I.<br><br>As described in "One Combined Medium" above, running said program instruction set causes microcomputer, 205, (and URS microcomputers, 205, at other subscriber stations) to place appropriate FIG. lA image information at particular video RAM then to transfer particular-number-of-overlay-completed information and instructions to control processor, 39J. Receiving said information | | functions of controller, 39, are invoked, control processor, 39J, is the processor that controls all controlled apparatus of decoder, 203, (except for a decryptor, 39K, described more fully below) and controls all apparatus described above as being controlled by SPAM-controller, 205C. Control processor, 39J, controls not only buffers, 39E and 39G, valves, 39F and 39H, and switch, 391, but also processors, 398 and 39D, as well as all other apparatus of decoder, 203, controlled by controller, 39. Control processor, 39J, has all required transmission capacity for transmitting control instructions to and receiving control information from all such controlled apparatus. In addition, control processor, 39J, controls the CPU and the PC-Micro Key 1300 |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|-----|-------------------------------|----------------------------|----------------------------------------|-------------------------------|------------------------------------------|
| | | | and instructions causes control processor, 39J, to place the number "00000001" at the aforementioned SPAM-second-precondition register memory, signifying that said image information represents the first overlay of its associated video program." **Extrinsic Evidence:** *Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | | system of microcomputer, 205, in certain SPAM functions and has capacity, via matrix switch, 391, to transmit control information to and receive control information from said CPU and said PC-MicroKey 1300 system. '885 Patent at 82:49-66. |
| 22 | demodulating said broadcast or cablecast transmission to detect an information transmission thereon ('885 patent, cl. 105) | *This term does not require construction beyond its plain and ordinary meaning.* Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | **Intrinsic Evidence:** '217 Patent, 18:44-47 "The television channel signal then passes to a standard amplitude demodulator, 32, which uses standard demodulator techniques, well known in the art, to define the television base band signal." | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "demodulating" step in claim 105 is defined solely in terms of the function (i.e., "to detect an information transmission" on the broadcast or cablecast transmission) and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6. "Demodulating" recites one or more functions but fails to recite sufficient steps or |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | acts for performing those functions. Thus, the "demodulating" limitation is limited to the steps or acts disclosed in the specification and equivalents.<br><br>The specification does not describe the demodulating step or act that performs the functions. In fact, the specification merely states it "demodulates said inputted channel signal using standard demodulator techniques." Further, it teaches demodulator, 32, uses standard demodulator techniques, well known in the art without any details as to the steps or acts to accomplish demodulating. The patent must disclose the corresponding algorithm for a computer-implemented means-plus-function term. Accordingly, the means plus function claim limitation is indefinite. |

EXHIBIT B

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|-----|--------------------------------|------------------------------|-----------------------------------------|--------------------------------|-------------------------------------------|
| | | | | | *Citations to specification of U.S. Patent No. 8,711,885* |
| | | | | | Automatically, controller, 20, causes decoder, 30, to cease transferring detected digital information from digital detector, 38, to controller, 39, and to commence filtering and demodulating inputted information at filter, 31, and demodulator, 32. |
| | | | | | '885 Patent at '885 Patent at 155:18-22. |
| | | | | | Demodulator, 32, demodulates said inputted channel signal using standard demodulator techniques and transfers the demodulated channel signal of said channel 13 to digital detector, 38; line receiver, 33; and audio demodulator, 35. |
| | | | | | '885 Patent at 128:63-66. |
| | | | | | In FIG. 2A, a selected frequency is inputted at a fixed frequency to said |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | decoder at filter, **31**, which defines the particular channel of interest to be analyzed. The television channel signal then passes to a standard amplitude demodulator, **32**, which uses standard demodulator techniques, well known in the art, to define the television base band signal. This base band signal is then transferred through separate paths to three separate detector devices. The apparatus of these separate paths are designed to act on the particular frequency ranges in which embedded signal information may be found. The first path, designated A, detects signal information embedded in the video information portion of said television channel signal. Path A inputs to a standard line receiver, **33**, well known in the art. Said line receiver, **33**, receives the |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | information of one or more of the lines normally used to define a television picture. It receives the information only of that portion or portions of the overall video transmission and passes said information to a digital detector, **34**, which acts to detect the digital signal information embedded in said information, using standard detection techniques well known in the art, and inputs detected signal information to controller, **39**, which is considered in greater detail below. The second path, designated B, detects signal information embedded in the audio information portion of said television channel signal. Path B inputs to a standard audio demodulator, **35**, which uses demodulator techniques, well known in the art, to define the television audio transmission and transfers |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | said audio information to high pass filter, **36**. Said filter, **36**, defines and transfers to digital detector, **37**, the portion of said audio information that is of interest. The digital detector, **37**, detects signal information embedded in said audio information and inputs detected signal information to controller, **39**. The third path, designated C, inputs the separately defined transmission to a digital detector, **38**, which detects signal information embedded in any other information portion of said television channel signal and inputs detected signal information to controller, **39**. Line receiver, **33**; high pass filter, **36**; detectors, **34**, **37**, and **38**; and controller, **39**, all operate under control of controller, **39**, and in preprogrammed fashions that may be changed by |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | controller, **39**. '885 Patent at 18:41-19:13. |
| 23 | causing, using a programmable control processor, at least one of said plurality of programmable processors to receive only some of said first digital data message, thereby to cause said plurality of programmable processors to process said first digital data message selectively, where the only some of the data message processed by | *This term does not require construction beyond its plain and ordinary meaning.* Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *Only a portion of the message is encrypted. Accordingly, the decryptor 39K will only receive the portion of the message that requires decryption. The unencrypted cadence information will be removed and the remainder selectively input to the decryptor.* **Intrinsic Evidence:** '217 Patent, 102:61-103:13 "In example #4, before the first message is embedded at the "Wall Street Week" program originating studio and transmitted, all information of the execution segment, the meter-monitor segment, and the program instruction set in the information segment are encrypted, using standard encryption techniques that encrypt binary information without altering the number | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "programmable control processor" in claim 105 is defined solely in terms of the function (i.e., causing "said plurality of programmable processors to process said first digital data message selectively") and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6. "Programmable control processor" recites one or more functions but fails to recite sufficient structure for performing those functions. Thus, the "programmable control processor" limitation is limited to the structure disclosed in the specification and equivalents. The specification does not use the term "programmable control processor." Accordingly, the means plus |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | said plurality of programmable processors contains a control signal ('885 patent, cl. 105) | | of bits in said information. However, the cadence information of said message remains unencrypted.  More precisely, the "01" header, any padding bits added at the end of the information segment, and the end of file signal that ends said message remain unencrypted.  (The length token and any padding bits at the end of the command information in a message that ends with an end of file signal are not, strictly speaking, cadence information because they provide no information as to the location of the header that follows such a message.) Like the second message of example #2, the first message of example #4 is only partially encrypted in order to enable subscriber stations that lack capacity to decrypt said message to process accurately the cadence information of said message." | | function claim limitation is indefinite.

If the limitation is found to be definite or is not construed under 35 U.S.C. § 112 ¶ 6., the specification teaches a "control processor 39J." The control processor 39J may be preprogrammed, indicating it is "programmable." Assuming the "programmable control processor" is the "control processor 39J," the "programmable control processor" is the processor at which all controlled functions of controller, 39, are invoked. The patent must still disclose, however, the corresponding algorithm for a computer-implemented means-plus-function term. Accordingly, the means plus function claim limitation is indefinite.

*Citations to specification of U.S. Patent No. 8,711,885*

In keeping with the function |

EXHIBIT B

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | **Extrinsic Evidence:**<br><br>*Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | | of control processor, 39J, as the processor at which all controlled functions of controller, 39, are invoked, all aforementioned particular register memories of controller, 39, are located at control processor, 39J.<br><br>'885 Patent at 82:3-7<br><br>Besides being the processor at which all controlled functions of controller, 39, are invoked, control processor, 39J, is the processor that controls all controlled apparatus of decoder, 203, (except for a decryptor, 39K, described more fully below) and controls all apparatus described above as being controlled by SPAM-controller, 205C. Control processor, 39J, controls not only buffers, 39E and 39G, valves, 39F and 39H, and switch, 391, but also processors, 398 and 39D, as well as all other apparatus |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | of decoder, 203, controlled by controller, 39. Control processor, 39J, has all required transmission capacity for transmitting control instructions to and receiving control information from all such controlled apparatus. In addition, control processor, 39J, controls the CPU and the PC-Micro Key 1300 system of microcomputer, 205, in certain SPAM functions and has capacity, via matrix switch, 391, to transmit control information to and receive control information from said CPU and said PC-MicroKey 1300 system.<br><br>'885 Patent at 82:49-66. |
| 24 | each said receiver station adapted to control the decoder in order to generate and | *This term does not require construction beyond its plain and ordinary meaning.*<br><br>Plaintiff objects to the | *The decoder 203 is controlled to obtain digital information from either a "full-field-search" or "normal-location-search". In either search mode, the decoder delivers video* | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "receiver station" in claim 1 is defined solely in terms of the function (i.e., "to control the decoder in order to generate and deliver video at the video monitor") and should |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|-----|--------------------------------|----------------------------|----------------------------------------|-------------------------------|-------------------------------------------|
| | deliver video at the video monitor ('775 patent, cl. 1) | contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *overlay information and the accompanying received video information properly, which is then displayed on a video monitor.*<br><br>**Intrinsic Evidence:**<br><br>'217 Patent,  236:21-44 "In the video/computer combined medium, capacity is found by transmitting said sets in portions of the television picture that are covered by locally generated overlays (which in digital television transmissions can include frames of transmitted video that are "frozen" after reception in fashions well known in the art).  One controlled function that is preprogrammed at the controllers, 39, of the decoders, 203, of subscriber stations and that is caused to be executed by receiving a SPAM message containing expand-to-full-field-search execution segment information is a function | | therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6.<br><br>"Receiver station" recites one or more functions but fails to recite sufficient structure for performing those functions. Thus, the "receiver station" limitation is limited to the structure disclosed in the specification and equivalents.<br><br>The specification fails to disclose the algorithm used by the "receiver station" to perform the function of controlling the decoder in order to generate and deliver video at the video monitor. The failure to disclose the corresponding algorithm for a computer-implemented means-plus-function term renders the claim indefinite.<br><br>*Citations to specification of U.S. Patent No. 8,675,775* |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | whose instructions cause said controller, 39, to cause the line receivers, 33, of said decoders, 203, to commence detecting digital information in every frame of its received video information from the first detectable portion of line of said frame to the last detectable portion of the last line of said frame.  A second controlled function that is preprogrammed at said controllers, 39, and that is caused to be executed by receiving a SPAM message containing resume-normal-location-search execution segment information is a function whose instructions cause said controller, 39, to cause said line receivers, 33, to commence detecting digital information in the normal transmission location of every frame of its received video information."  '217 Patent,  10:55-11:6 "TV signal decoder, 203, which is described more fully below, | | As regards decoders and decryptors, many different systems exist, at present, that enable programming suppliers to restrict the use of transmitted programming to only duly authorized subscribers. The prior art includes so-called "addressable" systems that have capacity for controlling specific individual subscriber station apparatus by means of control instructions transmitted in broadcasts. Such systems enable broadcasters to turn off subscriber station decoder/ decryptor apparatus of subscribers who do not pay their bills and turn them back on when the bills are paid.  '775 Patent at 5:29-38  Controller, 20, has capacity for controlling the operation of all elements of the signal processor and can receive |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | has capacity for receiving a composite video transmission; detecting digital information embedded therein; correcting errors in the received information by means of forward error checking techniques, well known in the art; converting the received information, as may be required, by means of input protocol techniques, well known in the art, into digital signals that microcomputer, 205, can receive and process and that can control the operation of microcomputer, 205; and transferring said signals to microcomputer, 205. Microcomputer, 205, is a conventional microcomputer system with disk drives that is adapted to have capacity for receiving signals from decoder, 203; for generating computer graphic information; for receiving a composite video | | operating information from said elements. Controller, 20, has capacity to turn off any element or elements of controlled subscriber station apparatus, in whole or in part, and erase any or all parts of erasable memory of said controlled apparatus.<br><br>'775 Patent at 17:64-18:3<br><br>Microcomputer, 205, is a conventional microcomputer system with disk drives that is adapted to have capacity for receiving signals from decoder, 203; for generating computer graphic information; for receiving a composite video transmission; for combining said graphic information onto the video information of said transmission by graphic overlay techniques, well known in the art; and for outputting the resulting combined information to a TV monitor, 202M, in a composite video |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | transmission; for combining said graphic information onto the video information of said transmission by graphic overlay techniques, well known in the art; and for outputting the resulting combined information to a TV monitor, 202M, in a composite video transmission." **Extrinsic Evidence:** *Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | | transmission. One such system is the IBM Personal Computer of International Business Machines Corporation of Armonk, N.Y. with an IBM Asynchronous Communications Adapter installed in one expansion slot and a PC-MicroKey Model 1300 System with Techmar Graphics Master Card, as supplied together by Video Associates Labs of Austin, Tex., installed in two other slots. '775 Patent at 10:65-11:12 |
| 25 | programming said control processor to compare information stored at said at least one register memory to said comparison information | *This term does not require construction beyond its plain and ordinary meaning.* Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *SPAM-controller, 205C and control processor 39J are examples of apparatus that compare information stored in a register with preprogrammed information.* **Intrinsic Evidence:** '217 Patent, 52:67-53-7 "Beginning with the bit of said transferred binary information immediately | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "programming said control processor with comparison information" step in claim 12 is defined solely in terms of the function (i.e., "to serve as a basis for determining the length or format of said at least one message of said message stream") and should therefore be construed pursuant to 35 |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | (2'649 patent, cl. 12) | | after the last of said X bits, SPAM-controller, 205C, selects L bits and records said bits, in their order after conversion, at particular length-info-@205 register memory.  Automatically SPAM-controller, 205C, compares the information at said SPAM-length-info-@205 memory with preprogrammed token comparison-205 information." **Extrinsic Evidence:** *Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | | U.S.C. § 112 ¶ 6. "Programming said control processor with comparison information" recites one or more functions but fails to recite sufficient steps or acts for performing those functions. Thus, the "programming said control processor with comparison information" limitation is limited to the steps or acts disclosed in the specification and equivalents. The specification teaches that "programming said control processor with comparison information" includes saving in memory (of a buffer/comparator) X bits of a SPAM execution segment. These bits can then be compared to a message in the message stream. The patent must still disclose, however, the corresponding algorithm for a computer-implemented |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|-----|----------------------------------|-----------------------------|-----------------------------------------|-------------------------------|-------------------------------------------|
| | | | | | means-plus-function term. Accordingly, the means plus function claim limitation is indefinite. *Citations to specification of U.S. Patent No. 7,752,649* Automatically controller, 39, compares the information at said SPAM-length-info memory to preprogrammed token comparison information and determines that said information at memory matches particular X-token information. '649 Patent at 56:39-42 Receiving said information causes buffer/comparator, 8, first, to place said information at a particular received signal location at buffer/comparator, 8, then to compare a particular portion the first X bits immediately after the first H bits of said binary |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | information (which X bits are the executions segment of said message) to particular preprogrammed comparison information in its automatic comparing fashion. (Buffer/comparator, 8, is preprogrammed with information that identifies said portion.). A match results with particular comparison information that is the bit image of particular SPAM execution segment information that instructs URS signal processors, 200, to decrypt.

'649 Patent at 75:48-59 |
| 26 | programming said programmable receiver station with multiple signal processing schemes to process television | *This term does not require construction beyond its plain and ordinary meaning.*

Plaintiff objects to the contention that this claim term constitutes a means or step plus function | *Decoder 203 and signal processor 26 are examples of apparatus that can process television programming signals encoded in variable formats.*

**Intrinsic Evidence:**

'217 Patent, 7:64-8:3 "In programming transmissions, | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "programming said programmable receiver station with multiple signal processing schemes" step in claim 9 is defined solely in terms of the function (i.e., "to process television programming signals encoded in variable formats") and should |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | programming signals encoded in variable formats<br><br>(6'649 patent, cl. 9) | limitation and is therefore indefinite. | given signals may run and repeat, for periods of time, continuously or at regular intervals.  Or they may run only occasionally or only once.  They may appear in various and varying locations.  In television they may appear on one line in the video portion of the transmission such as line 20 of the vertical interval, or on a portion of one line, or on more than one line"<br><br>'217 Patent, 11:52-55 "Decoder, 203, is preprogrammed to detect digital information on a particular line or lines (such as line 20) of the vertical interval of its video transmission input"<br><br>'217 Patent, 15:17-26 "In the present invention, the signal processor-26 in FIG.2; 26 in the signal processor system of FIG. 2D; in the signal processor system, 71 of FIG.6; 200 in FIG. 7; and | | therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6.<br><br>"Programming said programmable receiver station with multiple signal processing schemes" recites one or more functions but fails to recite sufficient steps or acts for performing those functions. Thus, the "programming said programmable receiver station with multiple signal processing schemes" limitation is limited to the steps or acts disclosed in the specification and equivalents.<br><br>The specification teaches that "programming said programmable receiver station with multiple signal processing schemes" means saving in memory (of a buffer/comparator) X bits of a SPAM execution segment. These bits can then be compared to a message in |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | elsewhere- is focal means for controlling and monitoring subscriber station operations. It meters communications and enables owners of information to offer their information to subscribers in many fashions on condition of payment.  It has capacity for regulating communications consumption by selectively decrypting or not decrypting encrypted programming and/or control signals" **Extrinsic Evidence:** *Markman* Order in 2:15-cv-01366 at Dkt. No. 246 and information relied upon in that decision. | | the message stream. The patent must still disclose, however, the corresponding algorithm for a computer-implemented means-plus-function term. Accordingly, the means plus function claim limitation is indefinite. *Citations to specification of U.S. Patent No. 7,856,649* Automatically controller, 39, compares the information at said SPAM-length-info memory to preprogrammed token comparison information and determines that said information at memory matches particular X-token information. '649 Patent at 56:39-42 Receiving said information causes buffer/comparator, 8, first, to place said information at a particular received signal location at buffer/comparator, 8, then |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | to compare a particular portion the first X bits immediately after the first H bits of said binary information (which X bits are the executions segment of said message) to particular preprogrammed comparison information in its automatic comparing fashion. (Buffer/ comparator, 8, is preprogrammed with information that identifies said portion.). A match results with particular comparison information that is the bit image of particular SPAM execution segment information that instructs URS signal processors, 200, to decrypt. <br><br> '649 Patent at 75:48-59 |
| 27 | inputting logic into said processor or computer to enable said receiver station | *This term does not require construction beyond its plain and ordinary meaning.* | *Buffer/comparator 8, part of signal processor 26, is programmed to control the receiver station based on instruct signals it receives.* | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "inputting logic into said processor or computer" step in claim 9 is defined solely in terms of the function (i.e., "to enable said receiver station to |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | to receive and identify said variable formats in accordance with said one or more instruct signals (6'649 patent, cl. 9) | Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. *See* "inputting logic". | **Intrinsic Evidence:** '490 Patent, 9:47-68, 10:10-12.  6'649 patent at 17:53-66, 129:15-20, 77:20-28, 78:8-16, 79:1-19 '217 Patent, 16:18-24 "Buffer/comparator, 8, receives said signals from said decoder and other signals from other inputs and organizes the received information in a predetermined fashion. Buffer/comparator, 8, has capacity for comparing a particular portion or portions of inputted information to particular preprogrammed information and for operating in preprogrammed fashions on the basis of the results of said comparing" **Extrinsic Evidence:** *Webster's New World Dictionary of Computer Terms* (1983) (input: 1 designating data and/or programs entered or to be | | receive and identify said variable formats in accordance with said one or more instruct signals") and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6. "Inputting logic into said processor or computer" recites one or more functions but fails to recite sufficient steps or acts for performing those functions. Thus, the "inputting logic into said processor or computer" limitation is limited to the steps or acts disclosed in the specification and equivalents. The specification does not use the terms "inputting logic," "logic" or "inputting logic into said processor or computer." Accordingly, the means plus function claim limitation is indefinite. |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | entered into the computer for processing  2 to so enter data and/or programs  3 such data and/or programs). (PMCVIZ00351619-29 at PMCVIZ00351626). *McGraw-Hill Dictionary of Scientific and Technical Terms* (3d. ed. 1984) (logic [ELECTR] 1. The basic principles and applications of truth tables, interconnections of on/off circuit elements, and other factors involved in mathematical computation in a computer.  2.  General term for the various types of gates, flip-flops, and other on/off circuits used to perform problem-solving functions in a digital computer). (PMCVIZ00351571-85 at PMCVIZ00351582). PMC may have an expert, Dr. Alfred Weaver, provide a declaration and may have Dr. Weaver testify at the *Markman* hearing, that | | |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|-----|---------------------------------|----------------------------|----------------------------------------|-------------------------------|------------------------------------------|
| | | | PMC's proposed construction is consistent with the understanding that one of ordinary skill in the art would have had of the disputed claim term or phrase in light of the intrinsic or extrinsic evidence. | | |
| 28 | processing said plurality of discrete signals according to one of said multiple signal processing schemes implemented by said one or more instruct signals to identify said particular format of said variable formats and demodulate or demultiplex said at least a portion of said | *This term does not require construction beyond its plain and ordinary meaning.*<br><br>Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *Processor 26 is an example of an apparatus that can process discrete signals according to multiple processing schemes.*<br><br>**Intrinsic Evidence:**<br><br>'217 Patent, 15:17-26 "In the present invention, the signal processor-26 in FIG.2; 26 in the signal processor system of FIG. 2D; in the signal processor system, 71 of FIG.6; 200 in FIG. 7; and elsewhere- is focal means for controlling and monitoring subscriber station operations. It meters communications and enables owners of information to offer their information to subscribers in | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "processing said plurality of discrete signals" step in claim 9 is defined solely in terms of the function ("to identify said particular format of said variable formats and demodulate or demultiplex said at least a portion of said television programming") and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6.<br><br>"Processing said plurality of discrete signals" should be construed pursuant to § 112 ¶ 6 because it recites one or more functions but fails to recite sufficient steps or acts for performing those functions. Thus, the |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | television programming (6'649 patent, cl. 9) | | many fashions on condition of payment.  It has capacity for regulating communications consumption by selectively decrypting or not decrypting encrypted programming and/or control signals"<br><br>'217 Patent, 75:48-59 "Receiving said information causes buffer/comparator, 8, first, to place said information at a particular received signal location at buffer/comparator, 8, then to compare a particular portion the first X bits immediately after the first H bits of said binary information (which X bits are the execution segment of said message) to particular preprogrammed comparison information in its automatic comparing fashion.  (Buffer/comparator, 8, is preprogrammed with information that identifies said portion.)  A match results with particular comparison information that | | "processing said plurality of discrete signals" limitation is limited to the steps or acts disclosed in the specification and equivalents.<br><br>The specification does not use the term "processing said plurality of discrete signals."<br><br>Accordingly, the means plus function claim limitation is indefinite. |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | is the bit image of particular SPAM execution segment information that instructs URS signal processors, 200, to decrypt." | | |
| 29 | programming a control processor to control said digital switch on the basis of information included in said message stream (´650 patent, cls. 1, 18) | *This term does not require construction beyond its plain and ordinary meaning.* Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *Controller 39 is an example of a control processor programmed to control a digital switch.* **Intrinsic Evidence:** ´217 Patent, 82:23-27 "Matrix switch, 39I, is a conventional digital matrix switch, well known in the art of telephone communication switching, that is configured for the small number of inputs and outputs required at controller, 39. Matrix switch, 39I operates under the control of control processor, 39J" ´217 Patent, 86:29-41 "Then control processor, 39J, processes said execution segment information. Automatically, control processor, 39J, selects | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "programming a control processor" step in claims 1 and 18 is defined solely in terms of the function (i.e., "to control said digital switch on the basis of information included in said message stream") and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6. "Programming a control processor" recites one or more functions but fails to recite sufficient steps or acts for performing those functions. Thus, the "programming a control processor" limitation is limited to the steps or acts disclosed in the specification and equivalents. |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | information of the first X bits of information at said SPAM-input-signal memory immediately after the first H bits, records said information of X bits at said SPAM-exec memory, and compares the information at said SPAM-exec memory, and compares the information at said SPAM0exec memory with controlled-function-invoking information that is preprogrammed at the RAM and/or ROM associated with said processor, 39J.  A match results with the aforementioned execute-at-205 information preprogrammed at SPAM-controller, 205C, of example #1.  Said match causes control processor, 39J, to execute the aforementioned load-run-and code instructions" <br><br> '217 Patent, 88:30-37 "Then said load-run-and-code instructions cause control processor, 39J, to commence | | The specification teaches that "programming a control processor" means saving in memory (of a buffer/comparator) X bits of a SPAM execution segment. These bits can then be compared to a message in the message stream. The patent must still disclose, however, the corresponding algorithm for a computer-implemented means-plus-function term. Accordingly, the means plus function claim limitation is indefinite. <br><br> *Citations to specification of U.S. Patent No. 7,752,650* <br><br> Automatically controller, 39, compares the information at said SPAM-length-info memory to preprogrammed token comparison information and determines that said information at memory matches particular X-token information. |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
|  |  |  | loading information at the main RAM of microcomputer, 205. Automatically, under control of said instructions, control processor 39J, causes matrix switch, 39I, to cease transferring information from EOFS valve, 39F, to control processor 39J, and to commence transferring information from control processor, 39J, to the CPU of microcomputer, 205" |  | '650 Patent at 56:39-42<br><br>Receiving said information causes buffer/comparator, 8, first, to place said information at a particular received signal location at buffer/comparator, 8, then to compare a particular portion the first X bits immediately after the first H bits of said binary information (which X bits are the executions segment of said message) to particular preprogrammed comparison information in its automatic comparing fashion. (Buffer/ comparator, 8, is preprogrammed with information that identifies said portion.). A match results with particular comparison information that is the bit image of particular SPAM execution segment information that instructs URS signal processors, 200, to decrypt. |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|-----|------|------|------|------|------|
| | | | | | '650 Patent at 75:48-59 |
| 30 | controlling said digital switch to communicate each one of said selected plurality of said digital television signals to a signal processor ('650 patent, cls. 1, 18) | *This term does not require construction beyond its plain and ordinary meaning.* Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *Controller 28 is an example of an apparatus that controls a digital switch to communicate digital television signals.* **Intrinsic Evidence:** '217 Patent, 151:14-31 "So determining a match causes the control processor, 39J, to execute particular preprogrammed transfer-this-message-to-controller-20 instructions that are associated with the instance of information at said particular location. The matrix switch, 39I, of the controller, 39 of decoder, 30, has capacity to transfer information to controller, 20, via control transmission means and executing said instructions causes said control processor, 39J, to cause the transfer of the information of said message to controller, 20 in the | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "controlling said digital switch" step in claims 1 and 18 is defined solely in terms of the function (i.e., "to communicate each one of said selected plurality of said digital television signals to a signal processor") and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6. "Controlling said digital switch" recites one or more functions but fails to recite sufficient steps or acts for performing those functions. Thus, the "controlling said digital switch" limitation is limited to the steps or acts disclosed in the specification and equivalents. The specification does not use the term "digital switch." Accordingly, the means plus function claim |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | fashion in which information of first message of example #4 is transferred from controller processor, 39J and buffer, 39E (by way of EOFS valve, 39F), via matrix switch, 39I, to decryptor 39K.  Receiving said message causes controller, 20, to load the enable-CC13 instructions and the enable-WSW instructions from the information segment of said message at particular RAM of controller, 20, and execute said instructions as the machine language instructions of one job."<br><br>'217 Patent, 153:11-14 "Automatically, controller, 20, causes matrix switch, 258, to transfer information of said audio portion inputted from said tuner, 215, to the output that outputs to a selected decryptor, 107"<br><br>'217 Patent, 155:7-10 "Automatically, controller, 20, causes matrix switch, | | limitation is indefinite.<br><br>*Citations to specification of U.S. Patent No. 7,752,650*<br><br>Controller, 44, has means for transmitting control information from its matrix switch, 441, to a particular switch, 212, and a particular digital tuner, 213, that are digitally actuated apparatus, well known in the art, that have capacity, respectively, for switching power on to radio, 209, and for tuning radio, 209.<br><br>'650 Patent at 211:52-57<br><br>Receiving said SPAM message causes said controller, 44, switch power on to and tune radio, 209, to the frequency, 104.1 MHz. (Controller, 44, has means for transmitting control information from its matrix switch, 441, to a particular switch, 212, and a particular digital tuner, 213, that are digitally actuated apparatus, |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | 258, to transfer the information of the aforementioned video output inputted from said tuner, 215, to the output that outputs to decryptor, 224" | | well known in the art, that have capacity, respectively, for switching power on to radio, 209, and for tuning radio, 209.)<br><br>Automatically, the control processor, 441, of said controller, 44, executes particular preprogrammed activate-simulcast controlled function instructions, loads said 104.1-MHz information of the information segment of said message at particular tune-to working register memory, and determines that the information at said working memory does not match information at particular SPAM-is tuned-to register memory (which signifies that radio, 209, is not tuned to the radio frequency, 104 .1 MHz). Not resulting in a match causes said controller, 44, to determine, in a predetermined fashion, that radio, 209, is not on and |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | operating. So determining causes said controller, 44, under control of said instructions, to transmit particular preprogrammed instructions, via said matrix switch, 441, to switch, 212, thereby causing said switch, 212, to switch on and actuate radio, 209; to transmit particular preprogrammed instructions, via said matrix switch, 441, to tuner, 213, thereby causing said tuner, 213, to tune radio, 209, to said frequency, 104.1 MHz; and to place information of said 104.1-MHz information at said SPAM-is-tuned-to register memory. Automatically, the 10 speaker apparatus of said radio, 209, commences receiving information of the radio transmission of said frequency and emitting the audio sound of said simulcast. <br><br> '650 Patent at 211:50- |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | 212:12. |
| 31 | Processing said selected plurality of said digital televisions signals to communicate video and audio signals to a television monitor ('650 patent, cls. 1, 18) | *This term does not require construction beyond its plain and ordinary meaning.* Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *Decryptors 224 and 231 are examples of apparatus that process digital television signals and output them to a monitor.* **Intrinsic Evidence:** '217 Patent, 155:7-10 "Automatically, controller, 20, causes matrix switch, 258, to transfer the information of the aforementioned video output inputted from said tuner, 215, to the output that outputs to decryptor, 224, thereby causing said decryptor, 224, to receive the information of said video portion (said information being, as explained above, encrypted digital video), to decrypt said information, and to transfer decrypted information of said video portion to matrix switch, 258" '217 Patent, 160:38-45 | Subject to 35 U.S.C. § 112 ¶ 6; claim term is indefinite. | The "processing said selected plurality of said digital televisions signals" step in claims 1 and 18 is defined solely in terms of the function (i.e., "to communicate video and audio signals to a television monitor") and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6. "Processing said selected plurality of said digital televisions signals" recites one or more functions but fails to recite sufficient steps or acts for performing those functions. Thus, the "processing said selected plurality of said digital televisions signals" limitation is limited to the steps or acts disclosed in the specification and equivalents. The specification does not |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | "Automatically, controller, 20, causes matrix switch, 258, to cease transferring the decrypted video information inputted from decryptor, 231, to the output that outputs to said third alternate contact of switch, 1, and to commence transferring said video information inputted from said decryptor, 231, to divider, 4, thereby causing divider, 4, to transfer said decrypted video information to microcomputer, 205" | | use the term "processing said selected plurality of said digital televisions signals." Accordingly, the means plus function claim limitation is indefinite. |
| | | | '217 Patent, 160:50-54 "to cause microcomputer, 205, to commence transferring the decrypted information of the transmitted video image to monitor, 202M, thereby causing monitor, 202M, to commence displaying, at its television picture tube, the information of the transmitted television image" | | |
| 32 | Programming said first of said plurality | *This term does not require construction beyond its plain and* | *Control processor 39J is an example of an apparatus that will execute predetermined* | Subject to 35 U.S.C. § 112 ¶ 6; claim term is | The "programming said first of said plurality of processors" step in claim 32 |

86

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | of processors to execute a predetermined controlled function ('650 patent, cl. 30) | *ordinary meaning.*<br><br>Plaintiff objects to the contention that this claim term constitutes a means or step plus function limitation and is therefore indefinite. | *controlled functions.*<br><br>**Intrinsic Evidence:**<br><br>'217 Patent, 151:14-23 "So determining a match causes the control processor, 39J, to execute particular preprogrammed transfer-this-message-to-controller-20 instructions that are associated with the instance of information at said particular location.  The matrix switch, 39I, of the controller, 39 of decoder, 30, has capacity to transfer information to controller, 20, via control transmission means and executing said instructions causes said control processor, 39J, to cause the transfer of the information of said message to controller, 20" | indefinite. | is defined solely in terms of the function (i.e., "to execute a predetermined controlled function") and should therefore be construed pursuant to 35 U.S.C. § 112 ¶ 6.<br><br>"Programming said first of said plurality of processors" recites one or more functions but fails to recite sufficient steps or acts for performing those functions. Thus, the "programming said first of said plurality of processors" limitation is limited to the steps or acts disclosed in the specification and equivalents.<br><br>The specification teaches that "programming said first of said plurality of processors" means saving in memory (of a buffer/comparator) X bits of a SPAM execution segment. These bits can then be compared to a message in |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|---|---|---|---|---|---|
| | | | | | the message stream. The patent must still disclose, however, the corresponding algorithm for a computer-implemented means-plus-function term. Accordingly, the means plus function claim limitation is indefinite. *Citations to specification of U.S. Patent No. 7,752,650* Automatically controller, 39, compares the information at said SPAM-length-info memory to preprogrammed token comparison information and determines that said information at memory matches particular X-token information. '650 Patent at 56:39-42 Receiving said information causes buffer/comparator, 8, first, to place said information at a particular received signal location at buffer/comparator, 8, then |

**EXHIBIT B**

| No. | Claim Term / Phrase (Patent(s)) | PMC's Proposed Construction | PMC's Intrinsic and Extrinsic Evidence | Funai's Proposed Construction | Funai's Intrinsic and Extrinsic Evidence |
|-----|----------------------------------|------------------------------|-----------------------------------------|-------------------------------|-------------------------------------------|
|     |                                  |                              |                                         |                               | to compare a particular portion the first X bits immediately after the first H bits of said binary information (which X bits are the executions segment of said message) to particular preprogrammed comparison information in its automatic comparing fashion. (Buffer/comparator, 8, is preprogrammed with information that identifies said portion.). A match results with particular comparison information that is the bit image of particular SPAM execution segment information that instructs URS signal processors, 200, to decrypt. |
|     |                                  |                              |                                         |                               | '650 Patent at 75:48-59 |